

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*United States District Courthouse*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 6, 2017

By CM/ECF

Catherine O'Hagan Wolfe, Clerk of Court
United States Court of Appeals for the Second Circuit
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

      Re:    **United States *v.* Mathew Martoma**
               **Docket No. 14-3599**
               **Argued October 28, 2015, before Katzmann, Ch. J., Pooler, Chin, CJJ.**

Dear Ms. Wolfe:

      The Government writes in response to the Court's December 9, 2016 request for supplemental briefing regarding the effect on this case of the Supreme Court's recent decision in *Salman v. United States*, 137 S.Ct. 420 (2016). The Government respectfully submits that the Supreme Court's decision in *Salman* provides additional bases to affirm Martoma's conviction.

      Martoma principally argues in his appeal that (1) in light of the Second Circuit's decision in *United States v. Newman*, 773 F.3d 438 (2d Cir. 2014), the Government's evidence was insufficient to establish that the information on which he traded was given to him in exchange for a personal benefit; and (2) the jury was improperly instructed as to the same personal benefit requirement. Martoma's first argument was meritless even under the personal benefit standard in *Newman* given the Government's evidence that the relevant tippers acted in the context of and to further lucrative consulting relationships. But it is now further undermined by the Supreme Court's rejection of the *Newman* benefit standard in *Salman*.[1] The law is now clear that a gift of confidential information to a trading friend or relative is enough to satisfy the personal benefit requirement, and there is plainly sufficient evidence of such a gift here.

      Martoma's second argument—that the jury was improperly instructed in light of *Newman*—is now squarely foreclosed by *Salman*, which approved an instruction that was in substance identical to the one used below.

---

[1] The second holding in *Newman*—that a remote tippee must know that the initial tip by an insider was in exchange for a personal benefit—was not addressed by *Salman* but is irrelevant to this appeal. *See Salman*, 137 S.Ct. at 425 n.1 (noting that the case "does not implicate" the issue of whether defendants must "kn[o]w the information they traded on came from insiders or that the insiders received a personal benefit in exchange for the tips").

## BACKGROUND

I.    **PROCEDURAL HISTORY**

The appellant in this case, Mathew Martoma, was tried and found guilty of conspiracy to commit securities fraud and of securities fraud. At trial, the Government introduced extensive evidence proving that Martoma received material nonpublic information regarding the results of a particular drug trial from two doctors, Sidney Gilman and Joel Ross. Gilman and Ross provided this information to Martoma out of friendship and in exchange for money. Indeed, both had consulting arrangements with Martoma that paid them thousands of dollars. Gilman, for example, consulted with Martoma 43 times at a cost of $1,000 an hour between August 2006 and July 2008, when he disclosed the drug-trial results at issue here. (Tr. 1228, 1231-32, 1240-43).[2] Ross was paid even more per hour. (Tr. 613, 622-23). These fees were paid to Gilman and Ross as part of a corrupt relationship whereby the two doctors leaked confidential information to Martoma that Martoma then used to evaluate investments and trade stocks. Ultimately, the information Martoma received from Gilman and Ross allowed him to avoid millions of dollars of trading losses for his own portfolio and for his firm (causing him to receive a $9.3 million bonus during the year in question. (Tr. 472; GX 555-56)).

At trial, the District Court provided a standard personal benefit instruction to the jury that largely mirrored language in the Supreme Court's decision in *Dirks v. SEC*, 463 U.S. 646 (1983). The court instructed the jury that it could not convict Martoma without finding that Gilman or Ross "received or anticipated receiving some personal benefit" for disclosing inside information to Martoma. (Tr. 3191). It then defined the requisite "personal benefit" as follows:

> The benefit may, but need not be, financial or tangible in nature; it could include obtaining some future advantage, developing or maintaining a business contact or a friendship, or enhancing the tipper's reputation….
>
> You may find that Gilman or Ross received a direct or indirect personal benefit from providing inside information to Mr. Martoma if you find that Gilman or Ross gave the information to Mr. Martoma with the intention of benefitting themselves in some manner, or with the intention of conferring a benefit on Mr. Martoma, or as a gift with the goal of maintaining or developing a personal friendship or a useful networking contact.

(Tr. 3191; *accord Dirks*, 463 U.S. at 664 (personal benefit may be shown by "a relationship between the insider and the recipient that suggests a quid pro quo from the latter, or an intention to benefit the particular recipient," or "when an insider makes a gift of confidential information to a trading relative or friend")). Martoma did not object to these instructions.

---

[2] "Tr." refers to the trial transcript; "GX" refers to a Government exhibit; "Def. Br." refers to Martoma's February 2, 2015 brief; "Reply Br." refers to Martoma's May 26, 2015 reply brief; "Gov't Br." refers to the Government's May 4, 2015 brief; "A" refers to the appendix; and "SPA" refers to the special appendix.

Several months after Martoma was sentenced, this Court issued its decision in *United States v. Newman*, 773 F.3d 438 (2d Cir. 2014). As relevant here, *Newman* reversed two insider trading convictions on the grounds that the Government's evidence of personal benefit was insufficient, holding that while "*Dirks* suggests that a personal benefit may be inferred from a personal relationship between the tipper and tippee. . . . such an inference is impermissible in the absence of proof of a meaningfully close personal relationship that generates an exchange that is objective, consequential, and represents at least a potential gain of a pecuniary or similarly valuable nature." *Id.* at 452. The Government moved for rehearing *en banc* and later for certiorari to the Supreme Court, but both petitions were denied.

Relying on *Newman*, Martoma argued on appeal, among other things, that (1) the Government presented insufficient evidence that Gilman and Ross received a personal benefit in exchange for the information they tipped to Martoma; and (2) the jury was erroneously instructed in light of *Newman*'s new personal-benefit standard.[3] As to the former claim, Martoma argued based on a disingenuous reading of the record that "[t]he government offered no proof from which a rational juror could find that Gilman divulged the efficacy results in exchange for the kind of personal benefit *Newman* requires." (Def. Br. 20). And although Martoma conceded that the Government had introduced evidence of "the friendship that had developed between Gilman and Martoma," he argued that this friendship was by itself insufficient under *Newman*. (*See id.* at 21, 23-24 (analogizing relationship to ones in *Newman*)). As to his claim of instructional error, Martoma argued that the District Court erred by instructing the jury that the personal benefit requirement could be satisfied by "a gift with the goal of maintaining or developing a personal friendship or a useful networking contact." (Tr. 3191; *see also* Def. Br. 26 (arguing that the instruction "misstated the law under *Newman*")).

Martoma's appeal was heard by this Court on October 28, 2015. On January 19, 2016, the Supreme Court granted certiorari in *United States v. Salman*, 792 F.3d 1087 (9th Cir. 2015), a Ninth Circuit decision that had expressly "decline[d] to follow" *Newman*'s new personal benefit test. *Id.* at 1093. The question presented to the Supreme Court was whether the personal benefit test "require[s] proof of 'an exchange that is objective, consequential, and represents at least a potential gain of a pecuniary or similarly valuable nature,' as the Second Circuit held in *United States v. Newman*." *Salman v. United States*, No. 15-628, Pet. for Writ of Certiorari, 2015 WL 7180648 (Nov. 10, 2015).

On December 6, 2016, the Supreme Court issued a unanimous decision in *Salman* reiterating that a personal benefit may be based on a gift of information to a trading friend or relative. 137 S. Ct. at 427-28. In so doing, the Court expressly rejected *Newman*'s interpretation of the personal benefit test as inconsistent with its opinion in *Dirks*.

## II. THE SUPREME COURT'S DECISION IN *SALMAN*

Unlike this case, *Salman* involved the transfer of material nonpublic information from one individual to another for solely non-pecuniary reasons. In *Salman*, Maher Kara, an investment banker, provided confidential information regarding pending mergers and

---

[3] Martoma also raised a series of additional challenges to his conviction that are not addressed here since they are matters unaffected by the Supreme Court's decision in *Salman*.

acquisitions to his brother, Michael Kara, who Maher knew was trading on it. *See id.* at 424. Michael, in turn, provided the information he received from Maher to others, including Maher's brother-in-law Bassam Salman, who made approximately $1.5 million in trading profits. *Id.* Salman was subsequently charged with conspiring to commit securities fraud and with securities fraud, was tried by jury, and was convicted on all counts. *See id.* at 424-25.

In his Ninth Circuit appeal, Salman argued that the Government's evidence was insufficient to establish that Maher had disclosed confidential information to Michael in exchange for a personal benefit. Although Maher and Michael were related, Salman argued that "there was no evidence that Maher received anything of a pecuniary or similarly valuable nature in exchange." *Id.* at 425 (internal quotation marks and citation omitted). Salman's argument relied principally on this Court's decision in *Newman*, which, as was the case here, had been decided after his conviction but before his appeal. *See id.*

The Ninth Circuit affirmed Salman's conviction. The court emphasized *Dirks*' recognition that an insider personally benefits when he "makes a gift of confidential information to a trading relative or friend," and found that "Maher's disclosure of confidential information to Michael, knowing that he intended to trade on it, was precisely the 'gift of confidential information to a trading relative' that *Dirks* envisioned." *United States v. Salman*, 792 F.3d 1087, 1092 (9th Cir. 2015) (quoting *Dirks*, 463 U.S. at 664). In response to Salman's argument that *Newman* required a "tangible benefit in exchange for [] inside information," the Ninth Circuit simply "declin[ed] to follow [*Newman*]." *Id.* at 1093. Such a rule, the court held, "would require us to depart from the clear holding of *Dirks.*" *Id.*

Salman subsequently petitioned for a writ of certiorari, which was granted on January 19, 2016. Before the Supreme Court, Salman again argued that, as this Court held in *Newman*, a tipper should not be considered to receive a "benefit" under *Dirks* "unless the tipper's goal in disclosing inside information is to obtain money, property, or something of tangible value." *Salman*, 137 S.Ct. at 426. Salman also raised vagueness arguments, claiming that insider trading law needed to be narrowed in a manner allegedly consistent with Supreme Court precedent in other areas of the criminal law. *See id.* at 428.

The Supreme Court disagreed, unanimously affirming the Ninth Circuit in a short decision issued on December 6, 2016. The Court reaffirmed the personal benefit test set forth in *Dirks*, which held that "'[t]he elements of fiduciary duty and exploitation of nonpublic information [] *exist when an insider makes a gift of confidential information to a trading relative or friend*.'" *Id*. at 427 (quoting *Dirks*, 463 U.S. at 664) (emphasis in original). "In such cases, '[t]he tip and trade resemble trading by the insider followed by a gift of the profits to the recipient.'" *Id.* (quoting *Dirks*, 463 U.S. at 664). Under that rule, the Court held, Maher violated duties owed to his clients by disclosing their confidential information to Michael, even if Maher never received anything tangible in return. *See id.* at 427; *see also id.* at 428 ("[B]y disclosing confidential information as a gift to his brother with the expectation that he would trade on it, Maher breached his duty of trust and confidence …."). Recognizing that this reasoning was inconsistent with *Newman*, the Supreme Court abrogated the personal benefit holding in that case. "To the extent the Second Circuit held that the tipper must also receive something of a 'pecuniary or similarly valuable nature' in exchange for a gift to family or friends," the Court

held, "we agree with the Ninth Circuit that this requirement is inconsistent with *Dirks*." *Id.* (quoting *Newman*, 773 F.3d at 452).

The Court also concluded that "Salman's jury was properly instructed that a personal benefit includes the benefit one would obtain from simply making a gift of confidential information to a trading relative." *Id.* at 429 (internal quotation marks and citation omitted).[4] The Court accordingly affirmed Salman's conviction. *Id.*

## ARGUMENT

**I.  THE SUPREME COURT'S DECISION IN *SALMAN* PROVIDES FURTHER REASON TO AFFIRM MARTOMA'S CONVICTION**

The Supreme Court's decision in *Salman* restored the personal benefit test set forth in *Dirks* to the way it operated prior to *Newman*. *Salman* therefore unsurprisingly provides additional reasons to deny Martoma's appeal. Martoma's insufficiency claim was meritless even under *Newman*, since the evidence at trial established that Gilman and Ross tipped Martoma as part of a pecuniary relationship where they were paid for information. But, as Martoma notes, there was also evidence at trial that Gilman and Martoma developed a personal friendship—a relationship that Martoma had helped foster for his own criminal purposes. In light of *Salman*, this evidence now provides a second, alternative basis to affirm the conviction below. Further, Martoma's claim of instructional error is meritless in light of *Salman*, which affirmed a jury instruction nearly identical to the one given in Martoma's trial.

### A.  There Was Sufficient Evidence of a Non-Pecuniary Benefit in Light of *Salman*'s Abrogation of *Newman*

Although *Newman* may have foreclosed the argument, *Salman* now makes clear that a tipper can benefit by making a gift of confidential information to a trading relative or friend even if there is no tangible, pecuniary exchange. *See Salman*, 137 S.Ct. at 428 (rejecting argument that "the tipper must also receive something of a 'pecuniary or similarly valuable nature' in exchange for a gift to family or friends, … this requirement is inconsistent with *Dirks*.") (quoting *Newman*, 773 F.3d at 452). Here, the relationship between Gilman and Martoma was sufficiently close that the jury was entitled to infer that Gilman meant to gift Martoma information by tipping him. This is especially true given that the evidence must be viewed "'in the light most favorable to the government, crediting every inference that the jury might have drawn in favor of the government.'" *United States v. Temple*, 447 F.3d 130, 136-37 (2d Cir. 2006) (quoting *United States v. Walker*, 191 F.3d 326, 333 (2d Cir. 1999)); *see also United States v. Kozeny*, 667 F.3d 122, 139 (2d Cir. 2011) (noting the "heavy burden" placed on defendants raising sufficiency challenges).

---

[4] The Supreme Court also rejected Salman's vagueness and lenity arguments. *See Salman*, 137 S.Ct. at 428-29. As to the former, the Court held that "*Dirks* created a simple and clear 'guiding principle' for determining tippee liability." *Id.* at 428. As to the latter, the Court held that Salman "has shown 'no grievous ambiguity or uncertainty that would trigger the rule's application.'" *Id.* at 429 (quoting *Barber v. Thomas*, 560 U.S. 474, 492 (2010)). "To the contrary, Salman's conduct is in the heartland of *Dirks*'s rule concerning gifts." *Id.*

In denying Martoma's post-trial motions, the District Court found that "as a result of his numerous sessions with Martoma," Gilman and Martoma "had developed a real friendship." (SPA 39). "From this evidence," it continued, "a reasonable jury could have found that Dr. Gilman and Dr. Ross received both pecuniary and non-pecuniary benefits as a result of breaching the duties of confidentiality they owed to Elan and Wyeth." (SPA 40). This finding was amply supported by the record. Gilman testified that Martoma intentionally fostered a friendship with him during the course of their approximately two-year relationship. (Tr. 1236 ("[A]s I had more and more interactions with [Martoma], [Martoma] said he wanted to be friends. He seemed to want to be closer…."); Tr. 1237 ("Q. You testified a moment ago that you believed he wanted to become your friend; is that right? A. That's what he told me.")). Although Gilman initially "resisted [Martoma's] overture[s]" at friendship, the two ultimately became close. (Tr. 1236). Martoma told Gilman that he was worried about him when Gilman missed his calls on an occasion while traveling abroad, which touched Gilman. (Tr. 1239-40). They exchanged emails, and met to have coffee and talk socially about Martoma's family, wife, and children. (Tr. 1237-38). And Gilman expressed "surprise[]" when he did not hear from Martoma after leaking the efficacy trial results because he "thought [they] were friends." (Tr. 1488; GX 235).

From Gilman's perspective, moreover, the relationship was intimately personal. As Gilman explained, Martoma "reminded [him] of [his] first son," who "was very bright also and committed suicide." (Tr. 1893). Gilman was fond of Martoma and enjoyed talking with him as a result. (*See, e.g.*, Tr. 1236). This was a different relationship than the one Gilman had with other consulting clients—and it was a difference that Martoma cultivated.

Martoma claims that the relationship at issue was not "the kind of 'meaningful' or 'close' relationship that *Newman* demands." (Def. Br. 23 (quoting *Newman*, 773 F.3d at 452)). *Newman* is no longer the law on this point, however, and the requirement that there be a "meaningful" and "close" personal relationship does not survive *Salman*. *Salman* undertook no analysis of the depth of the relationship between the tipper and tippee; it focused instead on the analogy to gift giving. *See* 137 S.Ct. at 427. If Maher had traded on confidential information and then gifted his profits to his brother Michael, "[i]t is obvious that Maher would personally benefit." *Id.* at 428. That Maher gave information rather than profits, the Court concluded, changed nothing. "Maher effectively achieved the same result by disclosing the information to Michael, and allowing him to trade on it." *Id.* Here too, Gilman and Ross did not trade on the information themselves but "achieved the same result by disclosing the information to [Martoma], and allowing him to trade on it." *Id.*

The Court's reasoning in *Salman*, moreover, is on all fours with how courts in this Circuit and others approached the personal benefit test before *Newman*. Before *Newman*, courts commonly noted that *Dirks*'s definition of personal benefit was meant to be "broad." *See, e.g.*, *United States v. Jiau*, 734 F.3d 147, 153 (2d Cir. 2013) (noting that "[p]ersonal benefit" is "broadly defined" under *Dirks*) (internal quotation marks and citation omitted); *SEC v. Obus*, 693 F.3d 276, 292 (2d Cir. 2012) (noting that "[i]n light of the broad definition of personal benefit set forth in *Dirks*, this bar is not a high one"); *see also United States v. Evans*, 486 F.3d 315, 321 (7th Cir. 2007) ("As *Dirks* illustrates, however, the concept of gain is a broad one."). *Salman*'s conclusion that the non-pecuniary exchange at issue was "in the heartland of *Dirks*'s rule concerning gifts" is consistent with this breadth. 137 S. Ct. at 429.

The breadth traditionally afforded the personal benefit concept, moreover, aligns with the test's rationales. The purpose of the requirement that a tipper personally benefit is simply to separate disclosures that are made for legitimate corporate purposes from those that are not (and that are accordingly improper). *See Dirks*, 463 U.S. at 664 (noting that whether a disclosure of confidential information will incur liability for insider trading "depends in large part on the purpose of the disclosure"); *see also id.* at 662 ("Thus, the test is whether the insider personally will benefit, directly or indirectly, from his disclosure. Absent some personal gain, there has been no breach …."). The depth of a friendship—even assuming such a thing could reliably be determined—does not matter in this context; a disclosure is a breach of duty to one's principal whether made to a close friend or a distant one. *Accord United States v. Whitman*, 904 F. Supp. 2d 363, 370-71 (S.D.N.Y. 2012) (noting that "the purpose of a prosecution premised, as here, on a *Dirks* approach is to protect shareholders against self-dealing by an insider who exploits for his own gain the duty of confidentiality he owes to his company and its shareholders. The element of self-dealing, in the form of a personal benefit—whether immediate or anticipated, and whether substantial or very modest—must be present.") (Rakoff, J.).

Especially when viewed in light of the pre-*Newman* (and post-*Salman*) breadth afforded the personal benefit concept, the jury was plainly entitled to find that Gilman was leaking confidential information to Martoma as a gift and with the intention of benefiting him. Gilman had a genuine affection for Martoma, who reminded him of his son and whom he viewed as a friend. And there is no other explanation for why Gilman would have given the drug results to Martoma were it not out of affection (or, as discussed below, for money). Gilman, for example, testified that his disclosure of the information was not accidental; he knew what he was doing was wrong. (Tr. 1243). And Martoma similarly took steps to disguise the visit to Gilman where he obtained the drug results, booking last-minute travel with his wife's credit card and using a taxi driver's phone to communicate with Gilman. (*See* Gov't Br. 19). Under these collective circumstances, the inference is unassailable that information was being either gifted to Martoma or given in anticipation of some improper pecuniary gain. *Cf. SEC v. Maio*, 51 F.3d 623, 632 (7th Cir. 1995) ("Absent some legitimate reason for [the insider's] disclosure . . . the inference that [the] disclosure was an improper gift of confidential corporate information is unassailable. After all, he did not have to make any disclosure, so why tell [the tippee] anything?").

### B. The Evidence that Gilman and Ross Acted for a Pecuniary Benefit Would Suffice Even Under the Now-Abrogated Rule in *Newman*

Martoma's sufficiency argument should also be rejected, even under the *Newman* standard, because Gilman and Ross provided confidential information to Martoma in exchange for consulting fees and the expectation of future work. To the extent there were any doubt, however, *Salman*'s abrogation of *Newman*'s requirement of a tangible, pecuniary *quid pro quo* provides further reason why the evidence at trial was sufficient.

As discussed, the evidence at trial established that both Gilman and Ross had lucrative consulting relationships with Martoma and his firm. Gilman consulted with Martoma over forty times, charging $1,000 per hour. (Tr. 1228, 1231-32, 1240-43). He told Martoma when meetings in which he would obtain confidential information would take place, and Martoma scheduled consultations shortly after those meetings in order to be debriefed. (Tr. 1272-84,

1314, 1356). Ross, in turn, billed out at $1,500 per hour, and Martoma promised to refer business contacts to a new testing clinic that Ross had helped open. (Tr. 555-56, 613, 622-27, 630, 642, 645, 684-86; GX 375). The jury was plainly entitled to find that Gilman's and Ross's decisions to tip Martoma were made in the context of, and were meant to further, their respective business arrangements. *See United States v. Temple*, 447 F.3d at 136-37 (evidence must be viewed in the light most favorable to the verdict). Indeed, the reason Martoma consulted with the two doctors so frequently was that they were both giving him nonpublic information.[5]

These facts are sufficient proof of a personal benefit under *Newman*, and are all the more so under *Salman*. *Salman* reiterated that the standard for a pecuniary benefit in *Dirks* is lenient: "a jury can infer a personal benefit—and thus a breach of the tipper's duty—where the tipper receives *something of value* in exchange for the tip or 'makes a gift of confidential information to a trading relative or friend.'" 137 S. Ct. at 423 (quoting *Dirks*, 463 U.S. at 664) (emphasis added). Given their consulting relationship, there was sufficient evidence for the jury to have found that Gilman and Ross received "something of value" for the information they provided. Indeed, they were both getting more than the type of intangible networking contacts or "reputational benefit[s]" that were referenced in *Dirks* and routinely found sufficient before *Newman. See Dirks*, 463 U.S. at 663; *see also, e.g.*, *United States v. Whitman*, 904 F. Supp. 2d 363, 371 n.7 (S.D.N.Y. 2012) (noting that the requisite "benefit" can "include, for example, maintaining a useful networking contact"). To the extent *Newman* placed these types of intangible but monetary benefits into question, *Salman* provides otherwise.

Martoma misleadingly claims in his reply brief that Gilman "disavow[ed] any suggestion that he provided inside information in exchange for a financial benefit" and that "[t]here is not a scrap of evidence showing that Gilman gave Martoma the efficacy results in exchange for some actual or expected financial gain." (Reply Br. 5). These characterizations are inconsistent with

---

[5] Martoma argues that the (conceded) benefit to Ross is irrelevant because Ross provided only public information to Martoma. (Reply Br. 7). That is wrong. Ross gave Martoma early access to efficacy results of the bapineuzumab trial, results that were highly material to Elan and Wyeth's stock prices and that Ross was obligated to keep secret. This was the same information that Gilman provided to Martoma, and on which Martoma traded; the only difference was that Gilman gave the information to Martoma first, in mid-July, whereas Ross gave it to Martoma the day before its public release, on July 28, 2008. (*See* Tr. 715-17 (referencing meeting regarding tip and noting that Ross testified that he was "shocked" and "flabbergasted" to discover that Martoma already appeared to know the data)). In insinuating that the information he received from Ross was publicly available, Martoma simply cites a portion of testimony in which Ross stated that the efficacy results "were no different than" what had been reported in a June 17, 2015 press release. (*See* Reply Br. 7). This conclusory assertion was the subject of extensive litigation below, which Martoma never appealed and now elides. The District Court rejected the argument that the information Ross disclosed was nothing more than what was contained in the June 17, 2015 press release, finding it "not persuasive to the jury and [] not persuasive to this Court." (SPA 34). The press release Martoma mentions allowed a positive spin on the data that the actual results disabused. (SPA 34; *see also* GX 466). Hence, when the actual results were disclosed, Elan's stock price dropped approximately 42% and Wyeth's approximately 11%. (SPA 34; *see also* GX 1265.). This would not have been the case if the information was already publicly available and baked into stock prices. (*See id.*; *see also* Tr. 3189; GX 1353).

the record; Martoma's only actual argument is that Gilman did not submit a bill for the precise information on which Martoma based his decision to sell Wyeth and Elan stock in mid-July 2008, and so there cannot be a benefit. But as explained in the Government's brief, the jury was entitled to infer that Gilman tipped Martoma in exchange for payments he had already received or the expectation of future consulting business. Indeed, Gilman could have submitted an invoice for the meeting where he tipped Martoma the bapineuzumab results. It is no defense that he ultimately declined to do so for fear that it "would [have] be[en] tantamount to confessing that [he] was feeding … [Martoma] inside information." (Tr. 1918; *see also* Gov't Br. 17-20).

### C. Martoma's Claim of Instructional Error Fails in Light of *Salman*

Finally, Martoma's claim of instructional error is meritless in light of *Salman*. Martoma claims on appeal that the District Court committed plain error by failing to instruct the jury that "the government [] must show 'a meaningfully close personal relationship that generates an exchange that is objective, consequential, and represents at least a potential gain of a pecuniary or similarly valuable nature.'" (Def. Br. 26 (quoting *Newman*, 733 F.3d at 452)). The instruction that Martoma requests, however, is based on language in *Newman* that was rejected in *Salman* as inconsistent with *Dirks*. *Salman* expressly held that "[t]o the extent the Second Circuit held that the tipper must also receive something of a 'pecuniary or similarly valuable nature' in exchange for a gift to family or friends, we agree with the Ninth Circuit that this requirement is inconsistent with *Dirks*." 137 S. Ct. at 428 (quoting *Newman*, 773 F.3d at 452). There cannot be any error in the instruction after *Salman*.

Indeed, the jury instruction on personal benefit provided by the district court in *Salman* was in substance identical to the one provided by Judge Gardephe below. In *Salman*, the jury was instructed that:

> Personal benefit includes not only monetary gain, such as a cut of the take or a gratuity from the tippee, but also a reputational benefit or the benefit one would obtain from simply making a gift of confidential information to a trading relative or friend. The benefit does not need to be financial or tangible in nature; it could include, for example, maintaining a useful networking contact, improving the tipper's reputation, obtaining future financial benefits, or making a gift of confidential information to a trading relative or friend.

Sept. 27, 2013 Tr. at 797, *United States v. Salman*, No. 11-cr-00625 (Dkt. 314) at 71. The Supreme Court held that this language "properly instructed that a personal benefit includes the benefit one would obtain from simply making a gift of confidential information to a trading relative." *Salman*, 137 S. Ct. at 429 (internal quotation marks omitted).

In this case, the jury was provided the following instruction as to the personal benefit requirement (again, without any objection by the defense):

> The benefit may, but need not be, financial or tangible in nature; it could include obtaining some future advantage, developing or maintaining a business contact or a friendship, or enhancing the tipper's reputation….

> You may find that Gilman or Ross received a direct or indirect personal benefit from providing inside information to Mr. Martoma if you find that Gilman or Ross gave the information to Mr. Martoma with the intention of benefitting themselves in some manner, or with the intention of conferring a benefit on Mr. Martoma, or as a gift with the goal of maintaining or developing a personal friendship or a useful networking contact.

(Tr. 3191).

There is no meaningful difference between the instruction in *Salman* and the one here. Nor can there be any error, let alone an error that qualifies as "plain," in light of *Salman*'s reaffirmation of *Dirks*' language that a gift of information to a trading friend or relative is sufficient to establish the requisite personal benefit. *Cf. United States v. Marcus*, 560 U.S. 258, 262 (2010) (in order to demonstrate plain error, appellant must show "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."). At bottom, the jury was properly instructed on the law as stated in *Dirks* and now *Salman*, and the jury correctly found Martoma guilty based on the record before it. Martoma's conviction should be affirmed.

## CONCLUSION

For the aforementioned reasons, as well as the reasons set out in its original brief, the Government respectfully submits that Martoma's claims of evidentiary insufficiency and instructional error are meritless in light of the Supreme Court's decision in *Salman v. United States*, 137 S. Ct. 420 (2016).

Respectfully submitted,

PREET BHARARA
United States Attorney

By: /s/ Robert Allen
Robert Allen
Margaret Garnett
Assistant United States Attorneys
Tel: (212) 637-2216

cc: Counsel of Record (via CM/ECF)