# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Paul D. Clement
paul.clement@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

January 6, 2017

**VIA E-FILING**

Catherine O'Hagan Wolfe
Clerk of Court
U.S. Court of Appeals for the Second Circuit
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

Re: *United States v. Martoma*, No. 14-3599

Dear Ms. Wolfe:

On December 9, 2016, this Court requested letter briefing regarding the impact of the Supreme Court's recent decision in *Salman v. United States*, 137 S. Ct. 420 (2016), on this case. *Salman* does nothing to remedy the basic problem in this case—namely, that the judgment of conviction cannot stand because the government failed to prove the requisite "personal benefit" to establish insider trading. If anything, *Salman* reinforces that conclusion by declining the government's invitation to adopt a rule that would have effectively eliminated the personal benefit requirement altogether.

In *United States v. Newman*, 773 F.3d 438 (2d Cir. 2014), this Court held that when the government relies on the relationship between the tipper and the tippee to establish a "personal benefit," it must prove that the two have "a meaningfully close personal relationship that generates an exchange that is objective, consequential, and represents at least a potential gain of a pecuniary or similarly valuable nature." *Id.* at 452. While the Supreme Court granted certiorari

KIRKLAND & ELLIS LLP

Catherine O'Hagan Wolfe
January 6, 2017
Page 2

in *Salman* to consider an aspect of that holding, *Salman* involved only one narrow part of *Newman*, namely, whether the government must prove that the tipper received "at least a potential gain of a pecuniary or similarly valuable nature" *even when* the tipper and tippee "shared a close family relationship"—in other words, even in the "trading relative" scenario that the Supreme Court expressly contemplated in *Dirks v. SEC*, 463 U.S. 646 (1983). *See Salman* Pet. i. That narrow question is the only one the Court resolved in *Salman*, concluding that the government need not prove a pecuniary benefit when the tipper and tippee share a close relationship of the type specifically addressed in *Dirks*. *See Salman*, 137 S. Ct. at 427-28. The Court did not discuss, much less overrule, *Newman*'s holding that if the government relies on the relationship between the tipper and the tippee to establish a personal benefit, it must prove that the two had "a meaningfully close personal relationship." 773 F.3d at 452.

That is critical because this case manifestly does not involve the kind of familial or close personal relationship the Supreme Court had before it in *Salman*. Instead, the purported "friendship" between Dr. Sidney Gilman and Mathew Martoma consisted of some pleasantries over e-mail and a single cup of coffee. That relationship is woefully insufficient to give rise to a personal benefit under *Newman*—as the government itself has implicitly recognized by effectively abandoning any reliance on that personal relationship on appeal and instead alleging a "financial" benefit. But the government's about-face cannot save the convictions it procured, as both the government and the court's jury instructions invited the jury to find a personal benefit based on that paltry relationship alone. Accordingly, even assuming the record evidence supported the government's new "financial" benefit theory (and it does not), the government cannot escape the problem that the jury also could have convicted on a theory that is legally deficient under an aspect of *Newman* that still remains the law of this Circuit. The judgment of conviction therefore must be reversed. At a minimum, Martoma is entitled to a new trial at which the government must prove a personal benefit under the correct legal standard.

**I.    Under Newman, Only A "Meaningfully Close Personal Relationship" Can Satisfy The Personal Benefit Requirement.**

## KIRKLAND & ELLIS LLP

Catherine O'Hagan Wolfe
January 6, 2017
Page 3

As explained in Martoma's opening brief (at 19-20), and reinforced by *Salman*, the Supreme Court has carefully circumscribed tippee liability. A tippee cannot be convicted of violating Section 10(b) unless the insider disclosed the inside information in exchange for a personal benefit. The Court thus made clear in *Dirks* that "only some persons, under some circumstances, will be barred from trading while in possession of material nonpublic information." 463 U.S. at 657. In a tipping case, "the test is whether the insider personally will benefit, directly or indirectly, from his disclosure. Absent some personal gain, there has been no breach of duty to stockholders . . . [a]nd absent a breach by the insider, there is no derivative breach [by the tippee]." *Id.* at 662; *accord Salman*, 137 S. Ct. at 427-28 (discussing *Dirks*).

As this Court recognized in *Newman*, if the personal benefit requirement is to have any meaning, then the kinds of benefits that qualify must have some substance. *Newman*, 773 F.3d at 451-53. In *Newman*, the tippers were insiders at two companies. One provided information to a business school acquaintance in exchange for "career advice." *Id.* at 452. The other supplied information to a "family friend[]" he had "met through church" and with whom he "occasionally socialized." *Id*. Although neither tipper received anything of concrete value in exchange for the tips, the government argued that these casual acquaintances were *themselves* sufficient to confer a "personal benefit" on the tippers. In making that argument, the government relied on language from *Dirks* indicating that the government can establish a personal benefit by proving that the tipper made "a gift of confidential information to a trading relative or friend." *Dirks*, 463 U.S. at 664. While the universe of "trading relatives" is inherently circumscribed, in the government's view, essentially anyone with whom the tipper had any relationship whatsoever should qualify as a "friend."

This Court rejected the government's sweeping theory that a tipper personally benefits from giving information to a mere casual acquaintance. The Court instead held that "the personal benefit received in exchange for confidential information must be of some consequence" to the tipper. *Newman*, 773 F.3d at 452. "[T]he mere fact of a friendship, particularly of a casual or social nature," is not enough. *Id*. If it were, "and the Government was allowed to meet its burden

**KIRKLAND & ELLIS LLP**

Catherine O'Hagan Wolfe
January 6, 2017
Page 4

by proving that two individuals were alumni of the same school or attended the same church," then "practically anything would qualify" as a benefit, and "the personal benefit requirement would be a nullity." *Id*. Accordingly, this Court held that the only kind of relationship that counts when analyzing the personal benefit question is "a meaningfully close personal relationship." *Id*.

*Newman* also went on to hold that even giving information to someone with whom the tipper has a meaningfully close relationship does not, by itself, establish a personal benefit to the tipper. Instead, *Newman* held that the government must also demonstrate that the exchange of information produced a benefit to the tipper that is "objective, consequential, and represents at least a potential gain of a pecuniary or similarly valuable nature." *Id*. *Newman* thus established two propositions: first, that the kind of relationship that suffices is "a meaningfully close personal relationship," and second, that even a tip to a relative or close personal friend must produce "a potential gain of a pecuniary or similarly valuable nature." *Id.*

**II.   *Salman* Held Only That If The Tipper-Tippee Relationship Is "Very Close," The Government Need Not Establish A Pecuniary Benefit.**

Although the Supreme Court denied the government's petition for certiorari in *Newman*, it later granted a criminal defendant's petition for certiorari in *Salman* to decide whether "the personal benefit to the insider that is necessary to establish insider trading under *Dirks*" always requires proof of "at least a potential gain of a pecuniary or similarly valuable nature," or whether it is "enough that the insider and the tippee shared a close family relationship." *Salman* Pet. i. In other words, the Court granted certiorari to decide whether a pecuniary or equivalent benefit must be proven *even when* there is a "meaningfully close personal relationship," as in the case of trading relatives. Although the Supreme Court concluded that *Newman* erred by imposing that additional requirement in cases involving the "trading relative" scenario specifically addressed in *Dirks*, the Court's self-described "narrow" opinion declined to expound upon what kinds of personal relationships suffice and whether a pecuniary benefit must be proven in cases

## KIRKLAND & ELLIS LLP

Catherine O'Hagan Wolfe
January 6, 2017
Page 5

where the tipper and tippee do *not* share the kind of "very close" relationship that *Dirks* discussed and *Salman* presented. *Salman*, 137 S. Ct. at 424, 427-28.

*Salman* involved a tipper named Maher Kara, who was a Citigroup investment banker. *Id*. at 424. Maher provided confidential information to his brother, Michael, who in turn passed that information along to Maher's brother-in-law, defendant Bassam Salman. *Id*. Although Salman maintained that the government failed to prove that Maher received a sufficient personal benefit for providing the tips, Salman did not dispute that Maher and Michael enjoyed "a meaningfully close personal relationship." *Newman*, 773 F.3d at 452. Nor could he have, as the case involved the precise "trading relative" scenario that the Supreme Court expressly addressed in *Dirks*. Indeed, Maher and Michael not only were brothers, but unquestionably enjoyed a "very close relationship." *Salman*, 137 S. Ct. at 424. Maher "loved his brother very much" and viewed Michael as "a second father." *Id*. (brackets omitted). The brothers spoke "nearly every day." Gov't *Salman* Br. at 7. Maher cared for Michael as he struggled to cope with their father's death in 2004. *Id*. at 3. Michael was the best man and "stood in for their deceased father at Maher's wedding," and characterized Maher as his "mentor," his "private counsel" and "one of the most generous human beings he kn[ew]." *Id*. at 7. Maher conceded that, because of this close familial bond, he tipped Michael to "fulfil[l] whatever needs [Michael] had." *Salman*, 137 S. Ct. at 424. And Maher even admitted that he viewed at least certain of the tips as the equivalent of a monetary transfer to Michael. *Id*. at 424, 428. Accordingly, Salman openly conceded that Michael and Maher shared a close personal relationship; indeed, that premise was built right into the question that Salman asked the Court to resolve. *See Salman* Pet. i (asking whether "potential gain of a pecuniary or similarly valuable nature" is required when the tipper and tippee "shared a close family relationship").

Salman sought to avoid liability not by contesting the closeness of the relationship between the brothers, but by arguing that even if the tipper and tippee concededly shared a close personal relationship—indeed, are the very relatives *Dirks* addressed—the government still must show that the tipper "personally receive[d] money or property in exchange for the tips." *Salman*, 137 S. Ct. at 424.

# KIRKLAND & ELLIS LLP

Catherine O'Hagan Wolfe
January 6, 2017
Page 6

In other words, in a case where the first prong of *Newman* (the meaningfully close personal relationship) was conceded, Salman urged the Court to adopt the second prong of *Newman*'s holding, *i.e.*, that the government must *always* prove that the tipper stands to receive "a potential gain of a pecuniary or similarly valuable nature," no matter what kind of relationship the tipper and tippee had. *Id*. at 425-26. The government, by contrast, sought a near-comprehensive ban on insider trading, arguing that "a gift of confidential information to *anyone*, not just a 'trading relative or friend,' is enough to prove securities fraud." *Id*. at 426 (emphasis added). "Under the Government's view, a tipper personally benefits whenever the tipper discloses confidential trading information for a noncorporate purpose." *Id.*

The Supreme Court ultimately declined to adopt either party's position. Instead, in what the Court described as a "narrow" opinion, it found the case controlled by the "trading relative" rule previously announced in *Dirks*, under which "'a gift of confidential information to a trading relative'" constitutes a personal benefit to the tipper. *Id.* at 427-28 (quoting *Dirks*, 463 U.S. at 664). Because there was no dispute that the tipper in *Salman* (Maher) had "provided inside information to a close relative" (Michael), the Court found the *Dirks* rule "sufficient to resolve the case at hand." *Id.*; *see also id.* at 429 ("[T]his case involves 'precisely the gift of confidential information to a trading relative' that *Dirks* envisioned."). And the Court concluded that "[t]o the extent" *Newman* held that a tipper "'must also receive something of a 'pecuniary or similarly valuable nature'" even when the information is given as "a gift to family or friends," "this requirement is inconsistent with *Dirks*." *Id.* at 428.

Notably, in reaching that narrow conclusion, the Court did not address what suffices to make someone the kind of "friend" that *Dirks* contemplated. The Court had no need to address that question because the case before it involved a trading relative—and a concededly "very close" one, at that. *Id.* at 427. Nor did the Court more broadly overrule *Newman*; the Court instead expressly limited its criticism of *Newman* "to the extent" it imposed a pecuniary benefit test on trading relatives and comparably close personal friends. *Id. Salman* thus did not consider, let alone overturn, *Newman*'s holding that when the government relies solely on the

KIRKLAND & ELLIS LLP

Catherine O'Hagan Wolfe
January 6, 2017
Page 7

relationship between tipper and tippee to establish a personal benefit, sharing a church or alma mater will not suffice. Thus, under the law of this Circuit, the government must demonstrate that the tipper and tippee had a "meaningfully close personal relationship." *Newman*, 773 F.3d at 452.

### III. *Salman* Does Not Alter The Conclusion That Martoma's Conviction Cannot Stand.

*Salman*'s narrow holding does not alter the conclusion that the conviction in this case cannot stand. First, *Salman* does not disturb the aspect of *Newman* that controls this case, namely, its holding that only a "meaningfully close personal relationship" is sufficient. Here, the alleged tipper (Gilman) and tippee (Martoma) were not even friends, let alone "meaningfully close" ones. There is thus no evidence from which the jury could correctly have found a personal benefit based on that relationship alone, and the district court erred by inviting the jury to do so. Indeed, the government has all but conceded as much on appeal, as it has effectively abandoned the "friendship" theory on which it relied below. But the government's alternative theory that Gilman received a *financial* benefit in exchange for providing inside information suffers from the equally fatal defect that it finds no support in the record—a defect that *Salman* manifestly does not cure. Accordingly, the judgment of conviction must be reversed. At a bare minimum, however, Martoma is entitled to a new trial at which the government cannot invite the jury to convict based on a legally insufficient personal benefit theory.

First, as already noted, *Salman* in no way overruled *Newman*'s holding that the government cannot establish a personal benefit simply by demonstrating that the tipper and tippee were casual acquaintances. Accordingly, the "meaningfully close personal relationship" test that this Court adopted in *Newman* remains the law of this Circuit. And, if anything, *Salman* reinforces the conclusion that this test is correct. Although the Supreme Court had no need to address what kinds of relationships count in *Salman*, the Court nonetheless expressly declined to adopt the government's sweeping position that the personal benefit test is satisfied any time the tipper gives "anyone" inside information. *Salman*, 137 S. Ct. at 426. The Court instead issued only a narrow decision holding that no pecuniary benefit is

## KIRKLAND & ELLIS LLP

Catherine O'Hagan Wolfe
January 6, 2017
Page 8

required if there is a "very close" relationship like the "trading relative" scenario at issue in *Salman* and discussed in *Dirks*. *Id.* at 424. *Salman* also reiterated that whether the tipper-tippee relationship is sufficiently close to infer a personal benefit from an exchange of information is "a question of fact," the answer to which cannot simply be assumed in every case. *Id.* at 429. Accordingly, to the extent *Salman* has any bearing on *Newman*'s holding that only a "meaningfully close personal relationship" will suffice, it only buttresses that holding.

    *Salman* also reinforces the conclusion that the relationship at issue in *this* case is plainly insufficient to give rise to a personal benefit. *Salman* involved "very close" brothers who spoke nearly every day. *Id.* at 424. As the Court emphasized, they exchanged gifts, and Maher even admitted that in one instance he provided Michael with inside information in lieu of financial support. *Id.* That is the classic case of a trading relative addressed in *Dirks*, which made it easy for the Court to issue its narrow holding that the case was controlled by *Dirks*. Indeed, if any relationship is sufficient to establish a personal benefit to the tipper, it is a relationship between brothers. The relationship between Gilman and Martoma is at the opposite end of the spectrum. As explained in Martoma's opening brief (at 23-25), the evidence shows only that the two men exchanged a few pleasantries over e-mail and once had a "chat" over "coffee." JA175-76, 178, 551. That is not friendship, and it is certainly not the kind of "meaningfully close personal relationship" necessary to establish a personal benefit under *Newman*. *Newman*, 773 F.3d at 452. It is inconceivable that Gilman would have offered Martoma gifts or financial support in lieu of inside information, and it is equally inconceivable that Gilman would have traded on the inside information and then provided a substantial cash gift to Martoma. The critical link that made *Salman* an easy case—and allowed the Supreme Court to distinguish its precedents requiring the defendant in a fraud prosecution to obtain money or property, *see* 137 S. Ct. at 428—is therefore missing here.

    Indeed, if the Martoma-Gilman relationship sufficed to establish a personal benefit, then "practically anything would qualify," and "the personal benefit requirement would be a nullity." *Newman*, 773 F.3d at 452. That result could not be reconciled with the Supreme Court's repeated holdings that Section 10(b) does

# KIRKLAND & ELLIS LLP

Catherine O'Hagan Wolfe
January 6, 2017
Page 9

not create a general duty to refrain from trading on material nonpublic information—holdings that *Salman* carefully avoided disturbing by declining to adopt the government's sweeping theory that giving "anyone" information is good enough. *See Chiarella v. United States*, 445 U.S. 222, 233 (1980) (§ 10(b) imposes no "general duty . . . to forgo actions based on material, nonpublic information"); *Dirks*, 463 U.S. at 654 ("[T]here is no general duty to disclose before trading on material nonpublic information . . . ."); *United States v. O'Hagan*, 521 U.S. 642, 661 (1997) (reaffirming *Chiarella*). This Court was therefore correct to reject the government's efforts to water down the personal benefit test to such an extent that the kind of casual acquaintance at issue in this case would count. Simply put, a meaningful personal benefit test is essential to distinguish criminal conduct from legal trading. *Dirks*, 463 U.S. at 662.

A meaningful personal benefit test is also essential to avoid constitutional problems, as deeming that pivotal element satisfied whenever the tippee and tippers could be characterized in any sense as "friends" would render the judicially implied crime of insider trading unconstitutionally vague. Due process requires criminal offenses to be defined with "sufficient definiteness that ordinary people can understand what conduct is prohibited." *Skilling v. United States*, 561 U.S. 358, 402 (2010) (quotation marks omitted); *see also M. Kraus & Bros. v. United States*, 327 U.S. 614, 621-22 (1946) ("The dividing line between unlawful . . . and lawful action" must be "so clearly expressed . . . that the ordinary person can know in advance how to avoid an unlawful course of action."). While *Salman* found that constitutional standard satisfied "as applied to this case"—*i.e.*, a case involving trading relatives—the Court was careful to acknowledge that there are more "difficult cases" out there, and it expressly declined "to address those difficult cases today." *Salman*, 137 S.Ct. at 428-29.

This is exactly the kind of case that demands a test like this Court's "meaningfully close personal relationship" test to avoid constitutional problems. While the universe of trading relatives is inherently circumscribed, the universe of potential friends is far more elastic. Does one become "friends" with another person simply after being introduced at a neighbor's cocktail party? Are work colleagues or other professional contacts "friends" even if they never socialize?

**KIRKLAND & ELLIS LLP**

Catherine O'Hagan Wolfe
January 6, 2017
Page 10

Are high school classmates who reconnected on social media now "friends"? Does someone in Martoma's position risk criminal liability by having a cup of coffee with a business contact? Does the line between innocuous and felonious conduct turn on whether someone tries to establish a degree of personal rapport with a business contact, and, if so, what degree suffices? The answers are inherently uncertain. As this Court thus correctly recognized in *Newman*, a generic "friendship" test would be both far too expansive and far too imprecise to satisfy due process.

Moreover, a criminal law cannot be "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015); *see Kolender v. Lawson*, 461 U.S. 352, 358 (1983) (criminal statutes must provide "minimal guidelines to govern law enforcement" and not enable "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections") (quotation marks omitted). Yet that is exactly what a generic "friendship" standard invites. Indeed, in the pre-*Newman* world, the government attempted to label just about any tipper-tippee relationship a "friendship," thus effectively claiming the power to decide after the fact whether trading was criminal. *See*, *e.g.*, *United States v. Cusimano*, 123 F.3d 83, 85 (2d Cir. 1997) (tippee was tipper's "subordinate and friend"); *SEC v. Maxwell*, 341 F. Supp. 2d 941 (S.D. Ohio 2004) (barber and customer); *United States v. ReBrook*, 837 F. Supp. 162 (S.D.W. Va. 1993) ("acquaintances"). That result would be troubling enough in any context, but it is particularly problematic in the context of securities law, "an area that demands certainty and predictability," especially for those involved in the securities industry. *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 188 (1994) (quotation marks omitted).

Accordingly, the standard that *Newman* adopted not only remains undisturbed, but also remains both necessary and correct. The requirement that the tipper and tippee share a "meaningfully close personal relationship"—and not just any connection that might loosely be called a "friendship"—provides the constitutionally mandated clear line for market participants, and appropriately cabins criminal insider trading liability so that investors have fair notice as to when trading is legal and when it is not. *See, e.g.*, *Skilling*, 561 U.S. at 402 (construing

# KIRKLAND & ELLIS LLP

Catherine O'Hagan Wolfe
January 6, 2017
Page 11

honest services fraud statute narrowly to avoid due process problem); *McDonnell v. United States*, 136 S.Ct. 2355, 2373 (2016) (construing federal corruption statutes narrowly to avoid vagueness and other constitutional problems). And under that standard, the government plainly failed to prove a personal benefit in this case, as Gilman and Martoma were not "friends" in any meaningful sense.

Indeed, the government itself has effectively conceded as much, as it all but abandoned the friendship theory it advanced below on appeal. The government's own brief on appeal characterized the relationship between Martoma and Gilman as "irrelevant," and instead argued that Gilman benefited financially. *See, e.g.*, U.S. Br. 11-30 (contending that "there was overwhelming evidence that the Doctors disclosed the confidential Drug Trial information to Martoma purely within the confines of their relationships as Martoma's paid consultants"). That alternative theory cannot save the government's case for two reasons. First, Gilman admitted at trial that he was never compensated for revealing the data on which Martoma allegedly traded. JA179, 227-28; *see* Martoma Br. 21-23; Reply 3-9. As Gilman's testimony confirmed, the fixed fees that he received for his earlier consultations were unrelated to the alleged inside information. Reply 4-6. Indeed, Gilman only learned he would obtain the information at issue some two weeks before it became public. Reply 6. It is impossible to imagine that the prior consultation fees, dating back two years, could have been advance payments for information that he did not even know he would have. In short, there is simply no evidence from which a jury could conclude that Gilman received *any* benefit, financial or otherwise, from purportedly giving that information to Martoma.

But even setting aside that evidentiary problem, the government's financial benefit theory still could not save the conviction it procured, as the jury instructions—which predated *Newman*—permitted the jury to find a personal benefit *either* based on a "financial" benefit theory *or* based on the kind of vague "friendship" theory that *Newman* rejected. The jury was instructed that a benefit may include "developing or maintaining a business contact or a friendship," JA266, and the government plainly invited the jury to treat the relationship between Gilman and Martoma as sufficient to satisfy that standard, *see, e.g.*, Martoma Reply Br. 3, 10. Yet this Court has since held that merely "developing" a

KIRKLAND & ELLIS LLP

Catherine O'Hagan Wolfe
January 6, 2017
Page 12

friendship is not enough; to satisfy the personal benefit requirement, there must be an *existing* personal relationship that is "meaningfully close." *Newman*, 773 F.3d at 452; *see* Martoma Br. 26-27. Because nothing in *Salman* rejects, alters, or undermines that holding, the district court plainly erred by failing to convey those essential requirements to the jury. And that error cannot be dismissed as harmless, as the government repeatedly—indeed, almost exclusively—invited the jury to find a personal benefit based on the purported relationship between Gilman and Martoma. *See Hedgpeth v. Pulido*, 555 U.S. 57, 58 (2008) (*per curiam*) ("A conviction based on a general verdict is subject to challenge if the jury was instructed on alternative theories of guilt and may have relied on an invalid one."). At a minimum, then, this case must be remanded for a new trial at which the jury is correctly instructed on the "meaningful close personal relationship" standard that remains the law of this Circuit after *Salman*.

## Conclusion

The government cannot avoid its burden to prove a personal benefit to the tipper by relying on the same untenably broad conception of "friendship" that this Court rejected in *Newman*. Nothing in *Salman* undermines that aspect of *Newman*, as *Salman* merely held that the government need not prove a financial benefit if, as conceded there, the tipper and tippee have a meaningfully close personal relationship. It is undisputed (and indisputable) that Martoma had no such relationship with Gilman. Accordingly, the judgment of conviction should be reversed. At a minimum, Martoma is entitled to a new trial before a jury that is properly instructed on the personal benefit requirement.

Sincerely,

Alexandra A.E. Shapiro
SHAPIRO ARATO LLP
*Counsel for Defendant-Appellant*

Paul D. Clement
KIRKLAND & ELLIS LLP
*Counsel for Defendant-Appellant*

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION

I hereby certify that:

1. This motion complies with the type-volume limitation of the Court's order dated December 9, 2016, because it does not exceed fifteen (15) single-spaced pages.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point font.

January 6, 2017

<u>s/Paul D. Clement</u>
Paul D. Clement
*Counsel for Defendant-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2017, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/Paul D. Clement
Paul D. Clement
*Counsel for Defendant-Appellant*
