# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Paul D. Clement
paul.clement@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

January 17, 2017

**VIA E-FILING**

Catherine O'Hagan Wolfe
Clerk of Court
U.S. Court of Appeals for the Second Circuit
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

Re: *United States v. Martoma*, No. 14-3599

Dear Ms. Wolfe:

The government's supplemental brief proceeds as if *Salman v. United States*, 137 S. Ct. 420 (2016), overruled in its entirety this Court's decision in *United States v. Newman*, 773 F.3d 438 (2d Cir. 2014). It did not. To be sure, the government urged the Supreme Court to adopt a broad theory that would have achieved that result and essentially rendered the personal benefit requirement a nullity. But the Court expressly declined to adopt that sweeping theory, instead resolving the case on much narrower grounds, and overruling *Newman* only to the extent it imposed a pecuniary benefit requirement even when a tipper makes a gift of confidential information to a trading relative or friend. That ruling still leaves the question of whether the tipper and tippee have the kind of meaningfully close personal friendship that makes a pecuniary benefit superfluous. As to that question, the *Salman* decision has nothing to say (because, *inter alia*, the tipper and tippee were brothers), and *Newman* continues to set forth the relevant test. And under *Newman*, Martoma and Dr. Gilman have nothing like the kind of meaningfully close personal relationship that Circuit precedent requires. Indeed, the government appeared to recognize as much in its principal briefing in this appeal when it shifted horses to a financial benefit theory. The government's belated insistence in its supplemental brief that the minimal Martoma-Gilman relationship suffices serves only to confirm that the government continues to embrace an any-relationship-will-do view that both *Newman* and *Salman* have rejected.

The government fares no better with its effort to defend Martoma's conviction on the alternative ground that Gilman or Dr. Ross provided inside information in exchange for a financial benefit. Even apart from whether this alternative argument comes within the terms of this Court's supplemental briefing order, it finds no support in the record, and the government tellingly identifies none. Indeed, the government previously addressed inconvenient evidentiary

## KIRKLAND & ELLIS LLP

Catherine O'Hagan Wolfe
January 6, 2017
Page 2

deficiencies in a financial benefit theory, such as the absence of any payment for the sessions in which the critical information allegedly passed, by doubling down on its amorphous "friendship" theory. In all events, even if there were any evidence to support the government's late-breaking financial benefit theory, the district court plainly erred by inviting the jury to convict on a friendship theory that *Newman* rejected. Because that aspect of *Newman* remains the law of this Circuit after *Salman*, Martoma is entitled, at a minimum, to a new trial before a properly instructed jury.

**I.    *Salman* Did Not Address, Let Alone Overturn, *Newman*'s Holding That The Personal Benefit Test Requires A "Meaningfully Close Personal Relationship."**

According to the government, the Supreme Court's decision in *Salman* eliminated this Court's "requirement that there be a 'meaningful' and 'close' personal relationship" between the tipper and tippee and "restored the personal benefit test … the way it operated prior to *Newman*." Gov't Letter 5-6. As explained in Martoma's opening letter brief, *Salman* did no such thing.

*Newman* imposed two separate requirements to satisfy the personal benefit requirement: first, the tipper and tippee must have "a meaningfully close personal relationship," and second, the tipper must obtain "a potential gain of a pecuniary or similarly valuable nature." *Newman*, 773 F.3d at 452. *Salman* concerned only the second requirement. And for good reason, as there was no dispute that the brothers in *Salman* enjoyed a meaningfully close personal relationship. Indeed, Salman's own petition for certiorari presented a question premised on the notion that "the insider and the tippee shared a close family relationship," Pet. i, as the "very close" brothers in *Salman* unquestionably did, *Salman*, 137 S. Ct. at 424. Accordingly, the only question before the Court was whether the government must prove "a potential gain of a pecuniary or similarly valuable nature" to the tipper *even when* the tipper and tippee share a meaningfully close relationship. *Id.* at 425. And that is the only question the Court resolved, holding that a pecuniary benefit is unnecessary "'*when an insider makes a gift of confidential information to a trading relative or friend*'" because "[i]n such cases, '[t]he tip and trade resemble trading by the insider followed by a gift of the profits to the recipient.'" *Id.* at 427 (quoting *Dirks v. SEC*, 463 U.S. 646, 664 (1983)) (emphasis and some alteration added by Court).

According to the government, *Salman* dispensed with its need to show a pecuniary benefit in *every* insider trading case, no matter "the depth of the relationship between the tipper and tippee." Gov't Letter 6. Thus, in its view, "the requirement that there be a 'meaningful' and 'close' personal relationship does not survive *Salman*" at all, and "[t]he purpose of the [personal benefit] requirement" after *Salman* "is simply to separate disclosures that are made for legitimate corporate purposes from those that are not." Gov't Letter 6-7. To be sure, that is the position the government *asked* the Court to adopt in *Salman*, arguing that "a gift of confidential information to *anyone*, not just a 'trading relative or friend,' is enough to prove securities fraud" because "a tipper personally benefits whenever the tipper discloses confidential trading information for a noncorporate purpose." 137 S. Ct. at 426-27 (emphasis added). But the Court declined to

## KIRKLAND & ELLIS LLP

Catherine O'Hagan Wolfe
January 6, 2017
Page 3

embrace that sweeping position, instead holding only that a pecuniary benefit need not be proven "when a tipper gives inside information to 'a trading relative or friend.'" *Id.* at 428. And the Court said explicitly that it was overruling *Newman* only "[t]o the extent [*Newman*] held that the tipper must also receive something of a 'pecuniary or similarly valuable nature' *in exchange for a gift to family or friends*." *Id.* (emphasis added).

The government resists that conclusion, claiming that "the depth of the relationship between the tipper and tippee" was irrelevant in *Salman*. Gov't Letter 6-7. In fact, the nature of that relationship was critical to the Court's holding, as it is precisely what made the case "easily resolve[d]" by the "trading relative" rule that *Dirks* announced (a rule that the Court invoked at least half a dozen times during its analysis). *Salman*, 137 S. Ct. at 427. As the Court detailed at length, Maher and Michael Kara had a "very close relationship." *Id.* at 424-26. Indeed, Maher even testified that he would not have hesitated to provide Michael with cash gifts, and that he "offered his brother money" and, as a substitute, later provided "information instead." *Id.* at 424. There was thus no question that the gift-giving analogy in *Salman* was an apt one, as the inside information was not just *akin* to a gift; it was *in fact* given in lieu of a cash gift. And that is precisely what enabled the Court to distinguish the case before it from its other precedents holding "that fraud is not consummated unless the defendant obtains money or property." *Id.* at 428. As the Court explained, "[m]aking a gift of inside information to a relative like Michael is little different from trading on the information, obtaining the profits, and doling them out to the trading relative." *Id.* Either way, the tipper himself benefits.

But it would make no sense to extend the same reasoning to cases where the tipper and tippee were not even friends, let alone "very close" relatives. To be sure, giving inside information in that situation may still be illegal—but only if the government proves that the tipper receives a concrete pecuniary benefit in return, such as a kickback of a portion of the trading proceeds. The government is relieved from its burden of proving that kind of concrete benefit only when the relationship between the tipper and the tippee is sufficiently close that the tip can meaningfully be analogized to "'trading by the insider followed by a gift of the profits to the recipient.'" *Id.* at 427 (quoting *Dirks*, 463 U.S. at 664).

Thus, if anything, the reasoning of *Salman* makes it more important to ensure that the tipper and tippee have the kind of meaningfully close personal relationship in which gifts *other than* inside information would be exchanged. A tipper does not obtain a direct personal benefit from giving inside information *in lieu of* a gift that he otherwise never would have given. In other words, the meaningfully close personal relationship is what makes the gift-giving analogy work.

The gift-giving analogy is plainly inapt when, as here, the tipper and tippee are mere casual acquaintances who had never given each other gifts and had no reason to start doing so in the future. If there is no reason to believe the tipper would have given the tippee a gift in the first place, then giving a tip cannot plausibly be analogized to giving its equivalent in cash or other

## KIRKLAND & ELLIS LLP

Catherine O'Hagan Wolfe
January 6, 2017
Page 4

value. Indeed, if the gift-giving analogy could extend to those cases too, then *any* tip could be characterized as a "gift"—particularly when, as here, the tipper received no financial benefit in return. That result could not be reconciled with the Supreme Court's repeated admonitions that trading on inside information is not illegal per se—a position from which the Court did not retreat in the slightest in *Salman*. To the contrary, *Salman* made clear that the gift-giving analogy cannot be invoked in *every* case, and cannot be invoked when, as in *Dirks* (and here), there is no basis from which a jury could infer that the tipper's "'purpose [was] to make a gift of valuable information to'" the tippee. *Id.* (quoting *Dirks*, 463 U.S. at 667). To conclude otherwise would raise grave due process concerns, as it would deprive the crime of insider trading of the fair notice that the Constitution demands.[1] In short, there must be some meaningful limitation on the types of relationships that suffice to give rise to a personal benefit, and the "meaningfully close personal relationship" limitation this Court imposed in *Newman* remains the correct one.

The government alternatively contends weakly that Martoma and Gilman *did* have a sufficiently close "friendship" to make the gift-giving analogy an apt one. That argument blinks reality. It is absurd to think that Gilman would have given Martoma a multi-million dollar cash gift, or conveyed the proceeds to Martoma had he traded on the information himself, merely because they exchanged the occasional pleasantries over the course of their professional relationship. As the government itself previously conceded, the two men lacked "any kind of personal relationship" at all. Gov't Br. 16. The government's belated attempt to retract that concession cannot be reconciled with the record. Contrary to its contentions, Gilman did not testify, in words or substance, that he and Martoma "became close," were "intimately personal," or had a "real friendship." Gov't Letter 6; JA174-78; Tr.1893. Nor could he have, as the only remotely social encounter they ever had was a "chat" over coffee during which Martoma told Gilman "about his family" and Gilman revealed "not much" about himself. JA175. Obviously, that is not the kind of "meaningfully close personal relationship" that *Salman* contemplates and *Newman* requires.

In sum, *Newman*'s "meaningfully close personal relationship" requirement remains alive and well after *Salman*, and it demands far more than the paltry evidence the government supplied here. The government's insistence otherwise underscores the need for this Court to confirm that

---

[1] Contrary to the government's suggestion (Gov't Letter at 5 n.4), the Supreme Court did not hold that the broad personal benefit theory the government advances in this case would pose no constitutional vagueness concerns. The Court instead rejected Salman's vagueness and lenity arguments because that case involved close trading relatives who fell within "the heartland of *Dirks*'s rule concerning gifts." *Salman*, 137 S. Ct. at 429. While the universe of trading relatives is self-contained, that is not the case for casual acquaintances like Martoma and Gilman. Expanding the concept of "friendship" to include such attenuated relationships would create the very due process concerns that the Court did not need to confront in *Salman*.

## KIRKLAND & ELLIS LLP

Catherine O'Hagan Wolfe
January 6, 2017
Page 5

the "meaningfully close personal relationship" requirement remains the law of this Circuit, and that it was not satisfied here. Otherwise, the government is bound to make good on its promise to resume "approach[ing] the personal benefit test" the same way it did "before *Newman*," Gov't Letter 6—which is to say, as if there were no personal benefit requirement at all.

**II.     *Salman* Does Not Support The Government's Meritless Financial Benefit Theory.**

Implicitly recognizing that *Salman* did not really revive its previously discarded "friendship" theory, the government devotes an entire section of its letter brief to trying to resuscitate its alternative argument that Gilman received a *financial* benefit in exchange for the purported tips. But even putting aside whether that argument falls within the supplemental briefing order, it is just as devoid of record evidence, as Gilman himself testified that he was paid nothing "in exchange for" the disclosure of the efficacy data on which Martoma allegedly traded. Reply Br. 4-7. And contrary to the government's speculation that Gilman viewed earlier payments as compensation for the tips, or made the tips in exchange for "the expectation of future consulting business," Gov't Letter 9, Gilman in fact testified that he neither wanted nor received *any* financial benefit for disclosing the efficacy data, whether in the past or in the future, JA179, 227-28. In a pre-*Newman* world, the government could (and did) downplay those concessions, by doubling down on the theory that the minimal Martoma-Gilman relationship sufficed under pre-*Newman* law. But in a post-*Newman* world, those concessions are fatal, as they confirm that Gilman received *no* benefit in exchange for the purported tips.

Contrary to the government's contention, Gov't Letter 8, nothing in *Salman* alters that conclusion, or relaxes, or even meaningfully addresses, the standard for proving a financial benefit. The passage on which the government relies in contending otherwise simply noted that the jury "can infer a personal benefit … where the tipper receives something of value in exchange for the tip *or* 'makes a gift of confidential information to a trading relative or friend.'" *Salman*, 137 S. Ct. at 423 (emphasis added) (quoting *Dirks*, 463 U.S. at 664). The Court did not elaborate on what constitutes "something of value"—for the obvious reason that the case before it involved the *second* scenario of "a gift of confidential information to a trading relative." *Id.* The Court thus did not consider, let alone decide, what kinds of benefit must be proven when the tipper and tippee do not have a meaningfully close personal relationship. Nor did the Court alter *Dirks*' rule that "reputational benefit[s]" suffice in such cases only when the "reputational benefit … *will translate into future earnings*." *Dirks*, 463 U.S. at 663 (emphasis added). To the contrary, the Court (unlike the government) *included* the emphasized caveat when quoting that rule. *See Salman*, 137 S. Ct. at 427. Accordingly, *Salman* in no way relieved the government of its burden of proving that Gilman received a *tangible* benefit in exchange for the purported tips—a burden that the government plainly failed to satisfy.

Shifting strategies yet again, the government claims that *Ross* received a financial benefit, Gov't Letter 8 n.5—an argument to which it devoted a scant three sentences of its brief on

## KIRKLAND & ELLIS LLP

Catherine O'Hagan Wolfe
January 6, 2017
Page 6

appeal, Gov't Br. 21.[2] But the government virtually ignored Ross below and on appeal for a reason: There is no evidence that Ross disclosed any inside information to Martoma. As Ross himself testified, he gave Martoma only publicly available information regarding the efficacy results:

> Q: When you got to the lobby, what happened?
>
> A: We had set a meeting. We greeted each other. We exchanged greetings, and he asked basically how the meeting was.
>
> Q: And what did you say?
>
> A: I responded. I said the meeting showed that the results were no different than the June 17, the drug failed to reach efficacy as indicated on [the] June 17, 2008 press report.

Tr. 714. That is why the government told the jury that "Martoma had gotten the secret information from Dr. Gilman," not Ross. JA263. Indeed, Ross even claimed *Martoma* told *him* the efficacy results, not the other way around. Tr. 715-17.[3] In all events, even if Ross had given Martoma inside information (which he did not), Ross conceded that Martoma "never gave [him] any money or any gifts," JA173, and when Ross sent Martoma an e-mail on an unrelated issue hinting at a quid pro quo arrangement, Martoma expressly declined the offer, GX 364; Tr. 720. Accordingly, there is no evidence that Ross ever provided any inside information on which Martoma traded, let alone received any benefit for doing so.

In sum, the government failed to prove that either Gilman or Ross received any cognizable benefit in exchange for providing inside information on which Martoma traded. Accordingly, Martoma's conviction cannot stand.

---

[2] Notably, the government does not suggest that the relationship between Martoma and *Ross* was close enough to support a "friendship" theory. Yet the only thing that separates that relationship from the Martoma-Gilman relationship is a cup of coffee. That cannot make the difference between lawful trading and a crime punishable by 20 years in prison.

[3] Contrary to the government's contentions (Gov't Letter at 8 n.5), the district court did not "reject[]" the conclusion that, as Ross himself testified, Ross provided only public data. As is clear on its face, the portion of the district court's opinion from which the government quotes in claiming otherwise concerns the information that *Gilman* purportedly disclosed, not any information from Ross. *See* SPA34. The court never even addressed whether *Ross* provided inside information because the court found the evidence sufficient to support a finding that Gilman did so. SPA33.

KIRKLAND & ELLIS LLP

Catherine O'Hagan Wolfe
January 6, 2017
Page 7

### III. *Salman* Did Not Bless The District Court's Erroneous Jury Instruction.

At a minimum, Martoma is entitled to a new trial because the district court plainly erred by instructing the jury, *inter alia*, that the government could satisfy the personal benefit test by demonstrating that inside information was given in hopes of "developing or maintaining … a friendship." JA266. Contrary to the government's contention, Gov't Letter 9-10, *Salman* did not condone that erroneous instruction. Indeed, Salman did not even argue the jury was improperly instructed; he instead limited his challenge to the sufficiency of the evidence. *See United States v. Salman*, 792 F.3d 1087 (9th Cir. 2015). The propriety of the jury instructions therefore was not at issue in *Salman*. And while the Court noted in passing that "Salman's jury was properly instructed that a personal benefit includes 'the benefit one would obtain from simply making a gift of confidential information to a trading relative,'" *Salman*, 137 S. Ct. at 429, it said nothing whatsoever about the separate language in the instruction that the government now claims was analogous to the language in the instruction challenged here.

At any rate, the language there is not actually analogous to the language in the instruction here, as the jury in *Salman* was not instructed that the hope of "developing … a friendship" qualifies as a personal benefit. The only reference to friendship in the *Salman* instruction was the language instructing that "making a gift of confidential information to a trading relative or friend" can suffice. *See* Gov't Letter 9. The instruction in this case thus was far broader than that, as it invited the jury to find a personal benefit even when a friendship *does not yet exist*. That is impossible to reconcile with *Newman*'s holding that the government may rely exclusively on the nature of the relationship between the tipper and tippee to satisfy the personal benefit test only when the two have a "meaningfully close personal relationship." *Newman*, 773 F.3d at 452. And that instructional error clearly cannot be dismissed as harmless, as the district court itself concluded that the jury may well have convicted on that erroneous theory given how the government presented its case. *See* SPA39-40. Accordingly, at a minimum, Martoma is entitled to a new trial before a properly instructed jury.

                        Sincerely,

Alexandra A.E. Shapiro             Paul D. Clement
SHAPIRO ARATO LLP             KIRKLAND & ELLIS LLP
*Counsel for Defendant-Appellant*     *Counsel for Defendant-Appellant*